In the Matter of the Liquidation of NEW YORK TITLE AND MORT-
GAGE COMPANY.*

WILLIAM P. CLARK, a Stockholder, and the COMMITTEE OF STOCK-
HOLDERS OF NEW YORK TITLE AND MORTGAGE COMPANY,
Appellants; LOUIS H. PINK, Superintendent of Insurance, as
Liquidator of New York Title and Mortgage Company, and
Others, Respondents.   (Appeal No. 1.)

In the Matter of the Liquidation of NEW YORK TITLE AND MORT-
GAGE COMPANY.

In the Matter of Plan for Reorganization of Series C-2.

In the Matter of Plan for Reorganization of Series F-1.

In the Matter of Plan for Reorganization of Series B-K.

COMMITTEE OF STOCKHOLDERS OF NEW YORK TITLE AND MORT-
GAGE COMPANY, etc., and GOLDEN HILL BUILDING CORPORATION,
a Stockholder, Appellants; LOUIS H. PINK, Superintendent of
Insurance, as Liquidator of New York Title and Mortgage
Company, and Others, Respondents.   (Appeal No. 2.)

First Department, May 5, 1939.

* Modfg. and affg. 169 Misc. 505; 171 id. 46.   See 257 App. Div. 822.

*William A. Barber* of counsel [*Barber, Giddings & Grunden,* attorneys], for the appellants Committee of Stockholders of New York Title and Mortgage Company, New York Title and Mortgage Corporation, in dissolution, and William P. Clark.

*Raphael H. Weissman* of counsel, for the appellant Golden Hill Building Corporation, a stockholder.

*Samuel Boksenbom* of counsel [*John B. Warner* with him on the brief; *William A. Shea,* attorney], for the respondent Superintendent of Insurance.

*Michael F. Dee* of counsel [*Louis Glickhouse* and *Arthur Rosenberg* with him on the brief; *Maurice Finkelstein,* general attorney], for the respondent Mortgage Commission of the State of New York.

*Simon H. Rifkind* of counsel [*Sidney R. Nussenfeld, Herbert Burton Brill* and *Barnet Kaprow* with him on the brief; *Wagner, Quillinan & Rifkind,* attorneys for Trustees of Series F-1; *Sherman S. Rogers,* attorney for Trustees of Series C-2; *Kramer & Kleinfeld,* attorneys for Trustees of Series B-K], for the respondents Trustees of Series F-1, Trustees of Series C-2 and Trustees of Series B-K.

*Leon Leighton* of counsel, for the respondent Brentmore Estates, Inc.

CALLAHAN, J. These appeals bring up for review certain determinations of the Superintendent of Insurance taken since the decision of the Court of Appeals in the matter of the four so-called test cases. (*Matter of New York Title & Mortgage Co.,* 277 N. Y. 66.) That decision laid down certain principles to be followed by the Superintendent of Insurance as liquidator in valuing the underlying mortgages as a preliminary to determining the appropriate setoff against the claims of the certificate holders on the company's breach of contract of guaranty. The result of the revaluation of the test cases is that two of the claims have been disallowed completely and the other two have been substantially reduced. What remains of these four claims, however, has now been consolidated with a large number of general claims and have been referred to a

referee to pass on them. We think that a reference is proper and necessary. The referee is directed to pass on the test cases first and report to Special Term as soon as possible. He will determine them in conformity with a standard to be proposed either by the Superintendent of Insurance or by himself, which standard shall follow the rules indicated in the opinion of the Court of Appeals above referred to. In this way appeals may be perfected but without delaying the proceedings in connection with the balance of the claims. The first appeal should, therefore, be determined by modifying the order to the extent indicated, without prejudice to the proceedings before the referee.

The second appeal is based on the following facts: The Superintendent of Insurance as liquidator and the trustees of three of the larger group series of certified issues (F-1, C-2 and B-K) negotiated settlements of the claims of their certificate holders against the company on the contracts of guaranty. A settlement was agreed upon with the trustees of C-2 for the sum of $10,500,000 and with the trustees of F-1 for the sum of $7,500,000. These sums were fixed as the total value of all claims under these series of certificates. The Superintendent of Insurance was prepared to settle the claims under Series B-K at $2,500,000. The trustees of that issue would not agree to that sum. The trustees of F-1 and C-2 protested against allowing the determination as to B-K to remain open. The settlement agreements for the first two groups were thereupon amended to provide that if the B-K claims were fixed at an amount higher than $2,500,000 the F-1 and C-2 settlements could be increased in proportion.

The total sums claimed under the three group series for breach of the guaranty contracts were: F-1, $27,463,985.28; C-2, $24,184,-788.54, and B-K, $13,155,957. Interest is claimed in each case from the date of default. The three group series, therefore, represent approximately $65,000,000 in claims. Other outstanding guaranteed mortgages upon which the company in liquidation is liable amount to the principal sum of $175,000,000. The total assets available are said to be valued at approximately $15,000,000. The petition asks for the approval of all the proposed settlements.

Objections have been filed by several persons including the committee of stockholders of the company in liquidation. Among other grounds the stockholders specify the following objections:

" (a) The Superintendent of Insurance has no power or authority to enter into such alleged settlements and compromises;

" (b) Such claims are not doubtful or uncollectible debts or claims within the meaning of Section 421 of the Insurance Law;

" (c) The persons with whom the proposed alleged settlements and compromises have been entered into, to wit, the Trustees appointed in proceedings under the Schackno Act for Series F-1 and C-2 are not the holders of the claims which it is proposed to settle and compromise but such claims are held by the respective holders of Series F-1 and C-2 certificates, as has been heretofore decided by the Courts; * * *

" (e) The alleged amounts proposed to be allowed under the proposed settlements and compromises are grossly excessive because they are based upon valuations of the security of the claimants which are greatly below the value of such security and have not been arrived at in accordance with law; and * * *."

Notice of the application for the approval of the settlements has been given to all claimants, certificate holders and others interested.

Special Term granted the application in part and overruled the objections to the power of the Superintendent to settle. Among other things the order as entered provides the following:

" Ordered that the objections made on behalf of stockholders of New York Title and Mortgage Company which contest the power of the Superintendent of Insurance of the State of New York to enter into the aforesaid settlement agreements, subject to the approval of the Court, be and they hereby are overruled, and it is further

" Ordered that all of the other objections made on behalf of stockholders and all of the other aforesaid objections made against the application of the Superintendent of Insurance be and they hereby are referred to John G. Saxe, Esq., of 102 Maiden Lane, New York City, as referee, to hear and report to the Court with his opinion thereon, with all convenient speed, and it is hereby further * * *

" Ordered, that the final disposition by the Court of the aforesaid application of the Superintendent of Insurance be held in abeyance pending the coming in of the referee's report."

This order is the subject of the second appeal. We are somewhat in doubt whether the court specifically overruled the objection to the right of the trustees to settle the claim or held such matter in abeyance. This objection raises only a question of law and it would seem quite clear that it was not intended to refer such question to the referee. We, therefore, construe the order to overrule only the objection concerning the power of the Superintendent of Insurance to make the settlement agreements.

The power to enter into settlement agreements depends on whether the claims are " doubtful " ones within the meaning of

section 421 of the Insurance Law. That statute authorizes the Superintendent as liquidator, "subject to the approval of the court," to "sell or compound all doubtful * * * debts or claims owed by * * * such insurer."

The claims which are the subject-matter of the proposed settlement may be subdivided or grouped into three classes: (1) Those based on the rights of certificate holders under the contracts of guaranty set forth in their respective certificates; (2) those based on rights arising under the contracts entered into by the company and set forth in the depositary agreements whereby payment of the principal and interest on each bond and mortgage deposited as collateral for the group series was guaranteed to the extent sufficient to pay the certificates with interest; and (3) other claims against the company based on alleged misapplication of money or property belonging to the group series by the company prior to its rehabilitation.

The first two classes of claims rest on express contracts of guaranty and are not in any sense doubtful in so far as their validity is concerned. On the other hand, the net amount and in many cases the very existence of such claims depend upon the proof of loss on the part of a certificate holder or his trustee because of the breach of contract of guaranty. The claimants are secured claimants. By subdivision 5 of section 425 of the Insurance Law "no claim of any secured claimant shall be allowed at a sum greater than the difference between the value of the security and the amount for which the claim is allowed, unless the claimant shall surrender his security to the Superintendent in which event the claim shall be allowed in the full amount for which it is valued." None of the present claimants have surrendered their security. If they had, their claim would not be doubtful either as to validity or amount. Where, however, claimants have retained their securities, the amount of the net claim may be said to be doubtful in the sense that the mortgage must be valued in order to determine the amount of setoff and hence the amount of allowable claim. We shall assume but not decide for the purpose of this discussion that a claim may be considered doubtful within the meaning of the statute where the doubt relates to the valuation of a mortgage setoff.

The claims adverted to in class 3 above refer to a very small portion of the total claims raised in each case. They are, however, damage claims for misconduct on the part of the company in liquidation and its officers and are beyond argument doubtful claims both as to the validity and amount. They certainly may be settled provided the trustees have the power to settle them.

It is not so clear, however, that the trustees have the right to bind the certificate holders in any settlement of their claims on the contracts of guaranty. The contracts of guaranty referred to in classes 1 and 2 above relate to a single liability separately contracted for. As we have stated, the agreement of deposit of the mortgages in each case guaranteed payment of principal and interest thereof. The trustees have obtained title to the mortgages and claim to be the holders of the rights flowing from the guaranty. In addition to such general guaranties, certificates issued and sold by the company guaranteed individually to the holder thereof payment of the principal sum represented thereby with interest. Whether the title to the choses in action arising out of the breach of contract of guaranty contained in the certificates is vested in the trustees or remains with the certificate holders is the doubtful issue.

Trustees of these group series were appointed under an indenture issued in a reorganization proceeding under chapter 745 of the Laws of 1933, known as the Schackno Act. Under such indenture the trustees were empowered to recover all sums due to the trust estate and to enforce any claims which the certificate holders of the series might have against the company including all rights and claims upon the guaranty and the certificates. The powers possessed by the trustees, however, could not be greater than those which the Schackno Act permitted them to have, for they are purely statutory trustees. The statute (§§ 3 and 4) gave the Superintendent of Insurance power to take over and administer the company, "to receive, collect and sue for the interest and principal of the bonds, mortgages and other security held by such guaranty corporation or otherwise, or to bring any foreclosure action on the same and take title to the property sold under such action in such name or names as he may determine." Under section 6, reorganization of a company in liquidation was provided for, and when any plan proposed was consented to by two-thirds of the principal amount of certificate holders and the court, the plan would go into effect.

The trustees before us, according to their indentures, among other things took a " trust estate " which included " all claims or choses in action which the certificate holders as a class have * * * with respect to any of the property included in the trust estate * * * and particularly (but without limiting the generality of the foregoing) all rights, claims and choses in action which the certificate holders as a class have or may have against the New York Title and Mortgage Company upon its guaranty of said cer-

tificates and/or of the bonds and mortgages underlying the same."
The trustees were also empowered to " enforce any and all rights
and claims which the certificate holders in this series as a class may
have against the New York Title and Mortgage Company, its
officers, directors and employees and against any other corporation,
person or persons which may be exclusively vested in said certificate
holders, including all rights and claims upon the guaranty and upon
all other agreements contained in Series F-1 certificates."

Therefore, whether the trustees possessed the choses in action
arising out of the certificates depends upon whether such causes
of action are held by the certificate holders as a class and whether
they had equal and ratable interests therein. It would seem doubt-
ful whether the certificate holders hold these claims individually or
as class claims and whether they have ratable interests in anything
but the mortgages held as security.

The question of the power possessed by the trustees has been
frequently before the courts. (*Mittlemann* v. *President & Directors
of Manhattan Co.*, 248 App. Div. 79; affd., 272 N. Y. 632; *Rabinowitz*
v. *President & Directors of Manhattan Co.*, 275 id. 453; *Weil* v.
*President & Directors of Manhattan Co.*, Id. 238.) In those cases
the trustees were asserting causes of action against the defendant
bank based on malicious interference with the rights of the certificate
holders and the alleged negligence of the bank as a depositary.
The court held that such causes of action were not class claims
because the interest of each certificate holder depended upon the
time and circumstance under which he became such a holder and
the rights of such certificate holders, therefore, vary. The court
held that the Schackno Act did not, either in letter or spirit, purport
to transfer to the trustees the causes of action asserted.

The purpose and reason of the Schackno Act are set forth in
*Matter of People by Van Schaick (Title & Mortgage Guaranty Com-
pany)* (264 N. Y. 69). Its purpose was to make it possible for a
large number of certificate holders to act as a unit in the manage-
ment of the mortgages and the presentation of class claims.

In the case before us, while the facts differ somewhat from the
*Bank of Manhattan* cases, there is serious doubt whether there was
legislative intention to permit the trustees to act on behalf of the
certificate holders on claims arising out of guaranties contained in
the certificates issued to numerous individuals. The claims so
arising would seem to be held separately and not as a class, though
the collateral held as security consists of mortgages held by the
trustee for the benefit of the certificate holders as a class. In the
present situation there are two guaranties existing against a single

liability; one held by a trustee for the benefit of the *cestui que trust*, and the other held by the latter individually. These claims are in turn secured by collateral held by the trustee for the class.

In our view of the cases, however, it is unnecessary to determine the power of the trustee to settle the claims of guaranty in so far as the liability therefor arises under the certificates. We said above that we assumed for the purposes of this appeal that the Superintendent of Insurance has power to settle these claims. We make this assumption because it makes very little difference whether the Superintendent has technical power to settle or whether he must determine substantially the value of the claim; in point of fact the claim cannot be settled for more than its value by the Superintendent of Insurance; and the trustees may not discreetly settle without ascertaining the fair value of their claims. As pointed out above, under section 425, subdivision 5, of the Insurance Law, no claim of any of these claimants may be allowed for a greater sum than the difference between the value of his share of the security and the amount of his guaranty. In order to protect the rights of remaining creditors as well as the stockholders, the court must be satisfied that this statutory limitation is obeyed. Furthermore, in view of the readjustment provision of these so-called settlements, any advantage that might ordinarily come from settlements does not exist in this case because the figures arrived at in proposed settlements are not conclusive. They amount in effect to tentative figures, fixing the value of three group claims. These claims must be fixed on a basis having a fair relation to the value of the mortgages. The mortgages must be valued in accordance with the rules indicated in the prior appeal in this proceeding (*supra*). Special Term before giving its approval to either the amount of the settlement or the Superintendent's valuation of the claim will be required to take into consideration the value of the security. Therefore, the task of valuing the mortgages cannot be avoided and whether the sums proposed by the Superintendent of Insurance are called settlements, recommendations or valuations can have no substantial effect in the proceeding other than possibly to place the burden upon an objecting party to show that the proposed settlement is unfair. Under the proceedings before the referee the burden of showing the value of the claims should remain on the certificate holder asserting the same or the trustees representing him. This does not mean that each certificate holder's claim must be separately presented and approved before the referee. Where mortgages are held under a group series, the mortgages may be valued and the aggregate value thereof will

fix the sum available as the value of the security to be prorated. There must be a hearing as to valuation and the rules held applicable to the proof of valuation laid down by the Court of Appeals (277 N. Y. 66) require that the Superintendent advance his theory of valuation with the proofs thereof and the objectors have the right to cross-examine his witnesses before the referee.

When the referee reports upon the questions of valuation and the other issues, the court can finally fix the amount of the claims giving due consideration to the referee's determination, the sums recommended by the Superintendent, and the evidence in the case.

We see no reason why distribution may not be made through the trustees. In this way the proceeding will in fact be one fixing the value of the claims, and the question concerning the power of the trustees to settle and give acquittance to so much of the claims as are based upon the provisions of the certificates will be rendered academic, and all possible advantages retained.

As to the third group of claims, there is very little information in this record as to the nature or amount thereof and the whole matter should be passed on by the referee.

The orders should be modified as indicated herein, and as so modified affirmed.

O'MALLEY, TOWNLEY and DORE, JJ., concur.

Orders unanimously modified as stated in the opinion and as so modified affirmed. Settle orders on notice.