118 N.J. Super. 80 (1972)
286 A.2d 515
OLGA MUNTZ, ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF ORVELL MUNTZ, AND OLGA MUNTZ, GENERAL ADMINISTRATRIX OF THE ESTATE OF ORVELL MUNTZ, AND OLGA MUNTZ, INDIVIDUALLY, PLAINTIFFS-RESPONDENTS,
v.
MANUCHEHR SMAILY, M.D., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 14, 1971.
Decided January 18, 1972.
*81 Before Judges KILKENNY, LABRECQUE and LANE.
Mr. Leonard Rosenstein argued the cause for appellant (Messrs. Feuerstein, Sachs & Maitlin, attorneys).
Mr. Jerry M. Finn argued the cause for respondents (Messrs. Goldberger, Siegal and Finn, attorneys; Mr. Sheldon A. Siegel, on the brief).
The opinion of the court was delivered by KILKENNY, P.J.A.D.
In this medical malpractice action plaintiff obtained an order on January 12, 1971 allowing her to effect service of the summons and complaint upon the defendant doctor now living in Teheran, Iran, his native land, by serving, by way of substituted service, the Central National Company of Omaha, an insurance carrier covering the defendant's employer, in accordance with R. 4:4-4(c) and 4:4-5(a). The order further provided that plaintiff shall mail to defendant to his last known address a copy of the complaint by registered mail and, by separate mailing, a copy of the complaint by regular mail together with a copy of the order.
On leave granted, defendant and the insurance company appeal from the order allowing such substituted service. They contend that service upon defendant's insurance company should not afford in personam jurisdiction where defendant is a bona fide resident of Iran. Plaintiff, who sues in her individual and representative capacities, as administratrix ad *82 prosequendum and general administratrix, maintains that service on defendant and on the insurance carrier by mail affords valid in personam jurisdiction.
Plaintiff in this action is the widow of Orvell Muntz. On May 11, 1967 Muntz attempted suicide by stabbing himself in the abdomen. He was thereafter rushed to the Newark City Hospital where surgery was eventually performed upon him. Following surgery he was placed in a surgery ward located on the 9th floor in a bed near a window, with post-operative tubes still inserted in his body. It is claimed that despite the fact that the hospital had a psychiatric ward and means of restraint and observation, none of these procedures and caution was taken with respect to Mr. Muntz. The tubes were removed on May 15, 1967 and, on that very day, decedent committed suicide by leaping out of the 9th-floor window.
Plaintiff earlier instituted a separate suit against Newark City Hospital, the City of Newark and Dr. Morton Kurland. The jury absolved Dr. Kurland from liability when it was revealed that it was Dr. Manuchehr Smaily (defendant in the instant action) who had made the decision placing decedent in the surgical ward. The verdict made no mention of the City of Newark for the obvious reason that the case had been tried on the theory that the hospital was an agency of the city. The verdict found the Newark City Hospital negligent. Damages were fixed at $35,000. Judgment was reduced to $10,000 in accordance with the stipulation in the pretrial order, pursuant to N.J.S.A. 2A:53A-8. We affirmed in that reduced amount. Muntz v. Newark City Hospital, 115 N.J. Super. 273 (1971).
It appears that defendant had left for his native land shortly after decedent's suicide. He took a post there as a surgeon, at Pour-Sina Hospital, Resht, Province of Gilan-Iran. It was only at the trial in July 1970 that plaintiff allegedly learned that he had been employed in the Newark City Hospital and was the one who had made the decision to place the decedent in the 9th-floor ward.
*83 R. 4:4-4 deals, among others, with conventional service of process in in personam actions. R. 4:4-4(e) also provides for service by delivery and mail (registered, certified or regular) in this State and for substituted service outside the State. Also, R. 4:4-4(i) provides:
* * * If service cannot be made by any of the modes provided by this rule, any defendant may be served as provided by court order, consistent with due process of law.
This subdivision of the rule has been utilized to effect service upon an absent motorist in an automobile accident case by service upon his insurance carrier. Feuchtbaum v. Constantini, 59 N.J. 167 (1971); Ledbetter v. Schnur, 107 N.J. Super. 479 (Law Div. 1969); Young v. Bunny Bazaar, Inc., 107 N.J. Super. 320 (Law Div. 1969). This same issue has been decided similarly in other jurisdictions. See Dobkin v. Chapman, 21 N.Y.2d 490, 289 N.Y.S.2d 161, 236 N.E.2d 451 (Ct. App. 1968).
In Feuchtbaum the court permitted such service "even though it [was] far from certain that the defendant [would] in fact receive notice of the action." 59 N.J. at 177. The interests and need of the plaintiff were balanced against those of defendant. It was noted that plaintiff's interest in the insurance policy (N.J.S.A. 17:28-2), the injustice of denying relief, and public policy were of much concern, as well as "fairness to the defendant." Thus, it was stated:
The carrier thus has a representative role, which, though it does not include an express agency to accept service of process, is nonetheless relevant when process cannot otherwise be served upon the insured. Realistically there is more of a chance that defendant will learn of the suit by such service than through available alternatives, for the carrier is likely to have an interest in finding him. Id. at 178.
The court relied upon Mullane v. Central Hanover Bank and Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), in regard to a "due process" argument. There it had been noted (at 314-315) that "due process" requires merely *84 a method "reasonably calculated" to notify the adverse party of the proceeding. In the instant case, it is extremely likely that defendant will be notified of the action if he has not been so notified already.
The situation in the automobile cases is analogous to that in the instant case. Certainly, there is a greater frequency of "absent motorist" cases than there is of "absent surgeons." However, the public policy should be equally as strong in favor of remedying malpractice as it is in automobile negligence. Defendant has had more than minimal contacts with this State to afford jurisdiction. See Fidelity Deposit Co. v. Abagnale, 97 N.J. Super. 132 (Law Div. 1967). Plaintiff was justifiably permitted to serve defendant through service upon his insurance carrier and by mail, as provided in the order.
The order under review is affirmed.